Timothy M. Bechtold
BECHTOLD LAW FIRM, PLLC
P.O. Box 7051
Missoula, MT 59807
(406) 721-1435
tim@bechtoldlaw.net

Mikaela Koski
Constance Van Kley
Rylee Sommers-Flanagan
UPPER SEVEN LAW
P.O. Box 31
Helena, MT 59624
(406) 298-5859
mikaela@uppersevenlaw.com
constance@uppersevenlaw.com
rylee@uppersevenlaw.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JAMES ELVERUD, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> LAKE COUNTY, MONTANA; ) <br> SHERIFF DON BELL; and DOES ) <br> 1-10, ) <br> ) <br> Defendants. ) <br> ) <br> ) | CV 21-123-M-DWM <br><br> **SECOND AMENDED COMPLAINT** |

Pursuant to the Court's Order of March 11, 2024, Plaintiff James Elverud files this Second Amended Complaint.

## Jurisdiction & Parties

1. This Court has jurisdiction over Elverud's federal claims pursuant to 28 U.S.C. § 1343(a)(3).

2. Elverud is an adult citizen of the United States who was confined in the Lake County Jail in 2021 and 2022.

3. Defendant Lake County is the political subdivision of the State of Montana that owns and operates the jail.

4. Defendant Donald Bell is the Lake County Sheriff and is responsible by law for the management and control of the jail, and the custody and care of the inmates confined in the jail.

5. Defendants Does 1–10 are individuals whose true identities and capacities are as yet unknown to Elverud and his counsel, despite diligent inquiry and investigation, and who acted herein as described more particularly below in connection with the breaches of duties and/or violations of law alleged here and who in some manner or form not currently discovered or known to Elverud may have contributed to or be

responsible for the injuries alleged here. The true names and capacities of the Doe Defendants will be substituted as they become known.

6. Defendants Bell and Does 1–10 acted under color of state law at all times relevant to Elverud's individual claim for relief.

## Facts

7. On March 29, 2021, Elverud was arrested and detained in the Lake County Jail for probation and parole violations. Elverud was also charged with possession with intent to distribute dangerous drugs.

8. Elverud was and remains a non-violent offender.

9. Elverud currently is an inmate at FCI Sandstone, a low security federal facility. At FCI Sandstone, Elverud has been appropriately classified as a low-risk inmate.

10. Elverud was not a difficult inmate and was not disciplined or reprimanded at any point during his incarceration at the Lake County Jail.

11. Although Elverud is a nonviolent offender, Lake County correctional officers placed Elverud in the jail's "A Block"—the block for the most violent offenders—without appropriate classification and segregation.

12. Lake County correctional officers refer to "A Block" as the equivalent of the jail's "supermax" block.

13. The Lake County correctional officers initially placed Elverud in a holding cell upon booking, as Elverud was experiencing withdrawal from drug addiction.

14. After the detoxification period, Elverud was transferred to A Block.

15. The first day that Elverud was in A Block, on or around April 2021, he was assaulted by another inmate, who punched him repeatedly in the face, causing bruising. Elverud did not fight back.

16. Although the Lake County Jail has video cameras in the cell, no correctional officers came to Elverud's aid.

17. Approximately one month later, Elverud was assaulted again in A Block.

18. Approximately 12 or 13 inmates were in A Block at the time of the second incident.

19. The other inmates told Elverud that he should leave the block.

20. Elverud moved toward the door and removed his glasses because he believed that they would assault him shortly thereafter.

21. Elverud was assaulted by multiple inmates in A Block. The inmates broke his nose and shattered his left orbital socket.

22. Again, Elverud did not fight back. He only tried to cover his face as the other inmates attacked him.

23. The inmates left Elverud bloody and disfigured on the floor of the block before he managed to escape to a cell.

24. Although the Lake County Jail has video cameras in the cell and both the assault and Elverud's injuries were apparent to any viewer, again no correctional officers came to his aid.

25. Correctional officers responded only when the toilets backed up and the cell flooded, at which point they noticed Elverud's severe and obvious physical injuries.

26. Elverud did not receive care or attention from correctional officers for approximately one hour after the second assault occurred.

27. Elverud required and eventually received emergency medical care for the injuries he suffered during the assault, including a CT scan, X-rays, medication, and other tests and monitoring.

28. For a substantial period of time after the assault, Elverud was unable to see out of his injured eye.

29. Elverud suffered extreme pain as a result of the assault.

30. Elverud suffers permanent vision impairment as a result of the assault. Even now, the injury makes it difficult for Elverud to focus on close-up activities, such as drawing and reading—both of which are important to him.

31. After the assault, correctional officers told Elverud that they had been concerned about his safety in A Block well before the second assault occurred.

32. Following the second assault, Elverud was moved to an ad-seg cell and then E Block, where he had no trouble with other inmates.

33. Elverud exhausted all administrative processes.

### Count I: Violation of Fourteenth Amendment Rights

34. Elverud seeks relief under 42 U.S.C. § 1983.

35. Elverud alleges violations of his rights under the Fourteenth Amendment.

36. The Fourteenth Amendment protects pretrial detainees like Elverud from assaults caused by deliberate indifference to a substantial safety risk.

37. A prison official is deliberately indifferent when he or she knows of, and then disregards, an excessive risk to a detainee's safety.

38. Defendants knew of and deliberately disregarded the substantial risk that placing Elverud in A Block with known violent offenders would subject him to assault.

39. Defendants' placement of Elverud, a non-violent offender, into A Block with classified violent offenders demonstrated deliberate indifference to serious threats to Elverud's safety.

40. A failure to protect claim under the Fourteenth Amendment includes four elements: (1) the defendant made an intentional decision regarding the detainee's confinement conditions; (2) those conditions placed the detainee at substantial risk of suffering serious harm; (3) the defendant acted objectively unreasonably by failing to take available measures to reduce the safety risk, making the consequences of those actions obvious; and (4) by not taking the available safety-enhancing measures, the defendant caused the detainee's injuries.

41. Here, Lake County correctional officers inappropriately placed Elverud in A Block. Elverud's placement put him in a position of substantial risk of suffering assault. A reasonable officer would have

appreciated the high risk for assault a non-violent offender would face in the jail's "supermax" block, and the correctional officers acted objectively unreasonably by housing Elverud in that block. The correctional officers caused the significant facial injuries Elverud suffered during the assault.

42. A claim against a local governing body, for example a county, based on an official policy, practice, or custom includes four elements: (1) the county's employee acted under color of state law; (2) the acts of the county's employee deprived a pretrial detainee of particular rights under the United States Constitution; (3) the county's employee acted pursuant to an expressly adopted official county policy or a widespread or longstanding practice or custom; and (4) the county's official policy, practice, or custom caused the county employee's deprivation of the detainee's rights.

43. Here, the correctional officers at Lake County Jail were acting under the color of state law. At the time of the incidents giving rise to Elverud's claims, Defendants Lake County and Sheriff Don Bell had policies or widespread or longstanding practices of failing to classify Lake County Jail inmates in accordance with their criminal history and of placing non-violent offenders with violent offenders. The Lake County

correctional officers acted pursuant to those policies or practices when they placed Elverud in A Block. Housing Elverud in A Block violated his right to be protected while in custody. The policies or practices of misclassification and inappropriate placement from Defendants Lake County and Sheriff Bell caused Elverud's assault and related injuries.

44. A claim against individuals includes three elements: (1) the individual defendant acted under color of state law; (2) the acts of the defendant deprived the pretrial detainee of particular rights under the United States Constitution; and (3) the defendant's conduct was an actual cause of the detainee's injury.

45. Here, the individual Defendants Doe Officers acted under color of state law when they inappropriately placed Elverud in A Block. Housing Elverud in A Block violated his Fourteenth Amendment right to be protected while in custody. Doe Officers' placement of Elverud in A Block was an actual cause of his injuries from the assault by violent offenders living in A Block.

46. Defendants failed to protect Elverud from assault by the other inmates in violation of the Fourteenth Amendment.

## Prayer for Relief

For the above-stated reasons, Elverud requests that this Court award the following relief:

1. Final declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, declaring that Defendants have violated Elverud's rights secured by the constitution and laws of the United States;

2. Damages to compensate Elverud fully for the deprivation of his constitutional rights;

3. Damages to compensate Elverud fully for all injuries;

4. Elverud's reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## Jury Demand

Elverud demands a jury trial on all issues so triable.

Dated this 1st day of April, 2024.

    /s/ *Mikaela J. Koski*
    Mikaela Koski
    UPPER SEVEN LAW

    /s/ *Timothy M. Bechtold*
    Timothy M. Bechtold
    BECHTOLD LAW FIRM

    *Attorneys for Plaintiff*